IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. 17-446 |
| | : | |
| JOSE MANUEL ALBERTO-SOSA | : | |

### ORDER-MEMORANDUM

**AND NOW**, this 18th day of December, 2024, upon consideration of Defendant Jose Manuel Alberto-Sosa's pro se "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)" (Docket No. 83) and the Government's response thereto, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

On June 6, 2019, Defendant pled guilty, pursuant to a plea agreement with the Government made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to one count of manufacturing child pornography images in violation of 18 U.S.C. §§ 2251(a) and (e), and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). On September 18, 2019, we sentenced him to 262 months' imprisonment—the low end of the Guidelines range and the term that Defendant agreed to in his Rule 11(c)(1)(C) plea agreement—to be followed by five years' supervised release. Defendant is currently incarcerated at Federal Correctional Institution ("FCI") Loretto and has served approximately 88 months of his sentence, with an anticipated release date of March 21, 2036. In the instant Motion, he seeks a reduction in sentence to time served pursuant to 18 U.S.C. § 3582(c)(1) based on harsh prison conditions, ineffective assistance of counsel, and medical conditions. The Government opposes the Motion.

We may not ordinarily modify a defendant's sentence after it has been imposed. See 18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 819 (2010). However, the First Step Act provides for compassionate release, stating that we may reduce an inmate's term of

imprisonment "after considering the factors set forth in [Title 18] section 3553(a)" if we find that "extraordinary and compelling reasons warrant . . . a reduction" and "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[1]  18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13.  A defendant must prove that these requirements are met by a preponderance of the evidence.  United States v. Lewis, Crim. A. No. 96-336, 2022 WL 2067958, at *3 (E.D. Pa. June 8, 2022) (citations omitted), aff'd, No. 22-2190, 2022 WL 4546859 (3d Cir. Sept. 29, 2022).  The United States Sentencing Commission's pertinent policy statement provides a list of extraordinary and compelling reasons that may warrant a reduction of sentence, which include the Defendant's medical circumstances, age, and family circumstances, abuse suffered during incarceration, and "other circumstances" of similar gravity.  See U.S.S.G. § 1B1.13(b).  Nonetheless, "[a] grant of compassionate release is a purely discretionary decision."  United States v. Stewart, 86 F.4th 532, 534 (3d Cir. 2023) (citation omitted).

Defendant first argues that compassionate release is warranted based on harsh conditions at FCI Loretto and other Bureau of Prisons ("BOP") facilities, particularly during the COVID-19 pandemic.  Defendant states that during the pandemic, inmates faced lockdowns that severely limited opportunities for recreation, worship, education, and legal research.  He asserts that at FCI Loretto, despite rampant COVID-19, officials falsely listed all inmates as asymptomatic and

---

[1] As an additional prerequisite, defendants must present their request for compassionate release to the Bureau of Prisons before filing a § 3582(c)(1) motion.  See United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020) ("[D]efendants must at least ask the [BOP] to [request compassionate release] on their behalf and give BOP thirty days to respond." (citing 18 U.S.C. § 3582(c)(1)(A))).  Attached to Defendant's Motion is a request for compassionate release submitted to the BOP on September 20, 2024, which was denied on October 4, 2024.  (See Def. Mot. Exs. 4, 4a.)  However, that request seeks compassionate release on an entirely different basis than the instant Motion, namely, the health of Defendant's mother.  Thus, it is not clear that the instant Motion has been properly exhausted.  Nonetheless, because we conclude that compassionate release is not warranted in any case, and because the Government does not raise this issue, we will address the merits of Defendant's Motion.

isolated them rather than offer treatment. Following the pandemic, he states that inmates continue to contend with black mold, crumbling infrastructure, unhealthy food, insufficient programming, poor medical care, and severe overcrowding. We do not minimize these serious concerns. Defendant does not, however, explain any way in which the conditions he describes impacted him uniquely or disproportionately. We cannot conclude that generalizations about issues purportedly facing the entire prison population constitute extraordinary and compelling reasons for Defendant's release. See United States v. Robinson, No. 22-2324, 2022 WL 11005332, at *1 (3d Cir. Oct. 19, 2022) (per curiam) (affirming denial of compassionate release because the defendant's "generalized concerns [regarding COVID-related prison conditions] are insufficient to constitute extraordinary and compelling reasons" (citing United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020))); see also United States v. Castillo, Crim. A. No. 12-230-3, 2024 WL 453608, at *4 (E.D. Pa. Feb. 6, 2024) ("[T]he Third Circuit has consistently denied pandemic-based claims for relief, especially where concerns regarding the pandemic were generalized and therefore not specific to the defendant." (listing cases)). Accordingly, we conclude that Defendant has not demonstrated extraordinary and compelling reasons for compassionate release based on his conditions of confinement.

Defendant also contends that ineffective assistance of counsel and other constitutional defects in his underlying prosecution are extraordinary and compelling reasons for compassionate release. He asserts that during the investigation of his case, no one ever informed him of his rights, his property was taken without warrant or explanation, and he was not provided with an English language interpreter. He further asserts that defense counsel ignored his desire to take his case to trial and pressured him to accept a plea agreement. These arguments are properly raised in a motion for habeas relief, not a motion for compassionate release. See Okereke v. United States,

3

307 F.3d 117, 120 (3d Cir. 2002) ("Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." (citing Davis v. United States, 417 U.S. 333, 343 (1974))); see also United States v. Lall, Crim. A. No. 17-343, 2023 WL 4957172, at *5 (D.N.J. Aug. 3, 2023) (concluding that "claims of prosecutorial misconduct, denial of due process and double jeopardy protections, and ineffective assistance of counsel are improper grounds for a motion under section 3582"). Indeed, Defendant has unsuccessfully sought habeas relief pursuant to 28 U.S.C. § 2255 on substantially similar grounds.[2] We therefore conclude that the constitutional deprivations Defendant alleges are not cognizable reasons for compassionate release.

Finally, Defendant argues that a reduction of his sentence is warranted by his health issues, specifically hypertension.[3] Section 1B1.13(b) provides that a defendant's medical circumstances constitute extraordinary and compelling reasons where the defendant is suffering from: (1) a terminal illness; (2) a physical, medical, functional, or cognitive impairment "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"; or (3) "a medical condition that requires long-

---

[2] After appointing counsel and holding an evidentiary hearing, we denied habeas relief, concluding, inter alia, that Defendant "received his Miranda warnings in his preferred language (Spanish)," that "investigators searched and seized Defendant's cell phone pursuant to a search warrant," and "that [Defendant's] counsel met the objective standard for effective assistance of counsel by giving Defendant enough information to make a reasonably informed decision whether to accept [a] plea offer." United States v. Alberto-Sosa, Civ. A. No. 20-5721, Crim. A. No. 17-446, 2023 WL 349785, at *4, 7 (E.D. Pa. Jan. 20, 2023) (quotation omitted).

[3] Defendant also asserts that he suffers from hyperlipidemia, or high cholesterol. He does not, however, attach or cite to any medical record or any other evidence substantiating this claim. Defendant's medical records indicate that as of July 30, 2024, Defendant had not been tested for hyperlipidemia. (See Docket No. 86 at 2 of 21.) There is also nothing in the record to suggest a need for such testing based on Defendant's family or medical history. We therefore conclude that Defendant has not met his burden of showing that he suffers from high cholesterol that might warrant compassionate release.

term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(A)-(C).

As noted above, Defendant asserts that he suffers from hypertension, citing high blood pressure readings on April 13 and 14, 2023, as well as "abnormal high readings going back to 2020." (Def. Mot. at 25.) Hypertension is not a terminal illness— as Defendant acknowledges, "it can be controlled in a variety of ways" including lifestyle changes and medication. (Id. at 24.); see also U.S.S.G. § 1B1.13(b)(1)(A). For this reason, it is not a condition from which Defendant is not expected to recover, nor does Defendant indicate that it has diminished his ability to provide self-care while incarcerated. See U.S.S.G. § 1B1.13(b)(1)(B). Thus, we consider whether Defendant's high blood pressure qualifies as "a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

Defendant asserts that BOP lockdowns, poor medical care, and lack of access to a healthy diet and exercise have hindered his ability to manage his blood pressure. He also claims that BOP has stopped monitoring his blood pressure since the elevated readings in April 2023. Defendant's medical records do reflect that on April 13 and 14, 2023 his blood pressure readings were 149/97 and 169/109, both of which are indicative of hypertension. (See Docket No. 86-1 at 8, 56 of 78); Ctr. For Disease Control, About High Blood Pressure (May 15, 2024), https://www.cdc.gov/high-blood-pressure/about/index.html [https://perma.cc/3LCM-JDAY] (setting forth professional standards for the interpretation of blood pressure readings). Notably, both of these readings were taken during a traumatic incident in which Defendant fell from his bunk, necessitating emergency room treatment for musculoskeletal trauma, headaches, nausea, and a facial laceration. (See Docket No. 86-1 at 4, 56 of 78). Since that time, Defendant's medical records reflect that he has

5

had two additional blood pressure readings: a January 30, 2024 reading of 105/75, which is considered normal, and a July 23, 2024 reading of 132/81, which is considered at-risk or high, depending upon the standard utilized. (See Docket No. 86 at 5 of 21); Ctr. For Disease Control, About High Blood Pressure. Defendant's medical records also indicate that his blood pressure is assessed annually and was most recently reviewed by BOP medical staff at a July 30, 2024 medical appointment, a week after his latest reading. (See Docket No. 86 at 2, 4 of 21.) Overall, while Defendant's records contain several recent indications of high blood pressure, he proffers no evidence of "abnormal high readings going back to 2020," or of a refusal by BOP to monitor his condition. (Def. Mot. at 25.) Rather, it appears that Defendant has received regular testing and that his blood pressure has improved significantly since the concerning readings in April 2023. On this record, Defendant has not met his burden of proving that he is being improperly cared for such that he is "at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Accordingly, we conclude that Defendant's medical circumstances are not extraordinary and compelling reasons for compassionate release.

Defendant has not met his burden of demonstrating that a reduction in sentence is warranted at this time. The record with respect to his blood pressure and treatment, even in combination with his generalized concerns about prison conditions, does not demonstrate an extraordinary and compelling reason for compassionate release. His constitutional arguments are not cognizable in this context. Accordingly, the Motion for Compassionate Release is denied.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.